# FRED WISING v. BROTHERHOOD OF AMERICAN YEOMEN.[1]

February 11, 1916.

Nos. 19,605—(239).

**Mutual benefit insurance—excessive use of intoxicating liquor.**

1. Defendant's contract provided that if any holder of a benefit certificate should "become addicted to the excessive or intemperate use of intoxicants" the defendant should not be liable thereon. *Held*, following O'Connor v. Modern Woodmen of America, 110 Minn. 18, 124 N. W. 454, that "the excessive or intemperate use of intoxicants" as used in this contract means "that the conduct of a member in this respect was of such a nature, and the habit so intemperately followed, as to impair his health, mental faculties, or otherwise render the insurance risk on his life more hazardous."

**Same—burden of proof.**

2. The burden of proving the violation of such provision of the contract is on the defendant.

**Charge to jury.**

3. The trial court committed no error in its charge to the jury or in its rulings on the admission of evidence.

**Evidence.**

4. The evidence is not so conclusively against the verdict as to justify a reversal of the order appealed from.

Action in the district court for Lyon county to recover $1,000 upon defendant's certificate of insurance upon the life of George Falk. The answer alleged that after the insured became a member he was intemperate in the use of intoxicating liquor so as to induce delirium tremens, which was the indirect cause of his death. The case was tried before Olsen, J., and a jury which returned a verdict for $839.56. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

[1] Reported in 156 N. W. 247.

Note.—As to scope and effect of provisions in insurance policies forbidding use of intoxicating liquor, see notes in 15 L.R.A. (N.S.) 206; 25 L.R.A. (N.S.) 1241.

*Harry S. Swensen* and *Davis & Michel,* for appellant.
*James H. Hall* and *Gislason & Gislason,* for respondent.

SCHALLER, J.

Action by the beneficiary on an insurance certificate issued by the defendant to George Falk during his lifetime. The case was tried to a jury which returned a verdict for plaintiff. Defendant moved for judgment notwithstanding the verdict or for a new trial; the motion being denied, it appeals.

On October 21, 1910, George Falk, then a resident of Charles City, Iowa, became a beneficiary member of the defendant fraternal organization. He remained such member until February 11, 1914, when he was accidentally killed at Tracy, Minnesota.

The defendant insists that the beneficiary certificate became void because Falk, after becoming a member of its association, violated his contract by becoming addicted to the excessive or intemperate use of intoxicating liquors.

There was evidence on the part of the defendant tending to show that some time during the month of April, 1913, the deceased went to Watertown, South Dakota; that while there he was on one occasion arrested for being drunk and pleaded guilty; and that on two or three occasions, while at Watertown, he had drunk intoxicating liquors to excess. There was also evidence that on the occasion of his arrest at Watertown, Falk was locked up in the city jail and that a doctor attended him and gave him medicine for weakness of the heart. This doctor testified that, in his opinion, Falk was at that time suffering from delirium tremens.

Other evidence tended to show that the insured went to Minneota, Minnesota, and that while there he was somewhat intoxicated on three different occasions and that, while at Minneota, he habitually used intoxicating liquors.

The plaintiff on his part secured admissions from the Watertown doctor to the effect that he had, just two days before, testified in another case involving the same transaction; that in his testimony at the other trial he had said nothing about delirium tremens, but that he had then testified that he had treated Falk for heart trouble. The cross-examination of other witnesses tended to show that, on the occasions on which

it was claimed that the insured was intoxicated, the witnesses had observed liquor on the breath of the deceased, and that he was feeling happy, but that he was not noisy, and in no way misbehaved or misconducted himself. Other evidence was elicited tending to show that Falk was a good workman, a man of good habits, well behaved, and neat in his attire and in his person.

Evidence was also introduced tending to show that from the time that the deceased became a member of the defendant organization up to the time that he went to Watertown, he had not used intoxicating liquors at all, that his habits were good; that he attended to his work; that he was not in the habit of being out in the evenings, and spent his time either in his rooms or at his work.

It was also shown that, while he was in Minneota, the deceased roomed within a couple of doors of a saloon, but that he was not a constant patron thereof, although he came in quite frequently, generally drinking a glass of beer, occasionally more than one glass. It was also shown that sometimes days, and even weeks, passed during which he did not go into the saloon at all.

A physician who had made an examination of the deceased on the twenty-sixth and twenty-eighth of December, 1913, testified that Falk was at those dates in fairly good health and physical condition; that he complained of muscular pains, but that he did not show any evidence of the use of alcohol; that his arteries were in good condition so far as observed, and that there was not any noticeable hardening of the arteries such as would come from the prolonged or habitual use of intoxicating liquors.

Other evidence was introduced by both parties from which the jury might have drawn inferences and conclusions in favor of or against the issue raised by the pleadings.

There are many assignments of error but they may be reduced to two principal contentions: That the court incorrectly stated the law to the jury; and that the evidence does not sustain the verdict.

1. The court instructed the jury that the defense was predicated on the charge that George Falk, within a year prior to his death, became intemperate in the use of intoxicating liquors, and that thereby his contract of insurance became null and void; that the certificate and by-laws

provide that if any member shall become addicted to the excessive or intemperate use of intoxicants his certificate shall be null and void; also that:

"Excessive or intemperate use of intoxicants, as used in the by-laws and policy, means 'that the conduct of the member in this regard must be of such a nature and the habit so intemperately followed so as to impair his health, his mental faculties or otherwise render the insurance risk on his life more hazardous.'

"The occasional indulgence in intoxicating liquors, even to the extent of becoming intoxicated, or the daily use of liquors for the same period, if you find such use, does not necessarily void this policy. It is to be held null and void only in case you find from the evidence, by a preponderance thereof, that the insured, George Falk, used intoxicating liquor so intemperately so as to impair his health or his mental faculties, or otherwise render the insurance risk on his life more hazardous; that is, to increase the risk."

The first extract from the charge is taken practically *verbatim* from the opinion of this court in O'Connor v. Modern Woodmen of America, 110 Minn. 18, 124 N. W. 454. We adhere to that decision. The next paragraph is merely an amplification of the first.

2. The court charged the jury that the burden of proof rested on the defendant to prove that deceased, after he became a member of defendant association, became addicted to the excessive or intemperate use of intoxicating liquors under the rules given in the charge. This is assigned as error. The learned trial court correctly stated the law. Lockway v. Modern Woodmen of America, 121 Minn. 170, 141 N. W. 1.

3. The court instructed the jury that:

. "The issue here before you is a question of contract, pure and simple; whether or not the contract has been violated and forfeited by George Falk, and it is immaterial whether this association is a fraternal association or any other kind of an insurance company."

Error is assigned to a portion of the above; but the assignment of error attributes to the court language not found in the record. We find no error in the foregoing instruction.

Other questions raised do not require extended discussion. The court committed no prejudicial error in its rulings on the admission of evidence.

4. An examination of the record satisfies us that the evidence was such that reasonable minds might draw different conclusions therefrom. The weight of the evidence and the credibility of the witnesses were eminently for the jury, whose verdict has been approved by the trial court. The evidence is not so conclusively against the verdict as to justify us in reversing the order appealed from.

Order affirmed.