ERVIN, J., dissenting.
DEVIN and SEAWELL, JJ., concur in dissent.
Civil action to recover damages for death of plaintiff's intestate alleged to have been caused by the wrongful act, neglect or default of the defendant.
The record discloses that plaintiff, administratrix, is the widow of James Garfield Hanks, who was killed on the morning of 12 January, 1947, about 8:35 a.m., when a delivery truck of Southern Dairies, Inc., which he was driving, collided with the engine of defendant's passenger Train No. 34 at a grade crossing near Oak Grove Church in Forsyth County.
It is in evidence that the train approached the single-track crossing, with headlight burning, coasting down grade at a speed of 40 or 45 miles per hour. The morning was cold and foggy; the atmosphere hazy.
The deceased was delivering milk, and Lawrence Tuttle, a boy of fifteen years of age, was with him on the "step-in-drive" truck — a retail delivery truck in which the driver stands up to drive — and as they came to the crossing, with which they were familiar, the deceased brought the truck to a stop. Both looked and listened, but neither saw nor heard the approaching train, and the deceased then drove onto the crossing.
The engineer testified that he sounded the regular crossing whistle, two long and two short blasts, for the crossing in question, "and I was blowing the last short when I hit the milk truck. . . . I didn't see that truck."
As bearing upon the measure of damages the plaintiff was allowed to show the gross earnings of the deceased for the past several years and that he was being paid an average weekly wage of $74.40 per week as a swing man or substitute truck driver at the time of his death.
In reply or rebuttal the defendant sought to show what manner of man the deceased was by offering the following:
1. Judgment of Winston-Salem Municipal Court showing that on 7 October, 1943, Garfield Hanks "entered a plea of guilty" and was *Page 181 
adjudged guilty of nonsupport of his two minor children and sentenced to the roads for six months, execution against the person suspended for fifteen years on condition the defendant pay into the Clerk's office $10 per week for the support of his children.
As this judgment was a bar to Hanks' entrance into the Army, it was suspended on 24 February, 1944, "during the period the said defendant is in the Military Service of the United States," the original judgment to be in full force and effect upon the termination of such service.
2. Complaint and order for alimony pendente lite in action filed by Dora A. Hanks v. Garfield Hanks for maintenance and support, said complaint having been filed in the Superior Court of Forsyth County 29 January, 1944, and order signed 9 February, 1944.
3. Summons and verified complaint filed in the Superior Court of Forsyth County 11 January, 1947, in the case of Garfield Hanks v. Dora Alexander Hanks for absolute divorce on ground of two years' separation, it being alleged in the complaint that the plaintiff and defendant therein had entered into an agreement respecting the custody and support of their three minor children. The children were to remain in the custody of the mother, and the plaintiff agreed to pay, through the Clerk's office of the Municipal Court, for their maintenance, support and education, $25 per week until the oldest two, twin girls, reached the age of eighteen years, and thereafter to pay in the same manner and for like purpose $12.50 per week until the youngest child attained the age of eighteen years.
This complaint was filed on the day prior to the death of plaintiff's intestate. The summons was returned unserved due to "plaintiff's death."
4. The defendant offered the original inventory of the estate of Garfield Hanks, filed 25 July, 1947, showing "salary due decedent at date of death, $110.33," the instant action for wrongful death, and nothing more.
All the foregoing evidence offered by the defendant was excluded. Objection and exception in each instance.
The usual issue of negligence, contributory negligence and damages were submitted to the jury and answered in favor of the plaintiff, the jury assessing the damages at $27,500.00.
From judgment on the verdict, the defendant appeals, assigning errors.
The appeal presents for review the rulings on the motions for nonsuit and the exception to exclusion of defendant's evidence offered to show the character of the deceased and his disinclination to provide for dependent members of his family. *Page 182 
The defendant stressfully contends that its motion for judgment of nonsuit should have been allowed, if not at the close of plaintiff's evidence, then certainly at the close of all the evidence. Authorities may be found which lend support to the rulings below, and others which seem to point in the opposite direction. It is clearly a border-line case. Quinn v. R.R., 213 N.C. 48, 195 S.E. 85. Upon full consideration and careful perusal of the record, we are inclined to the view that plaintiff's evidence survives the demurrers and suffices to make it a matter for the jury. Anno. 162 A.L.R. 96. The rulings on the motions for judgment as in case of nonsuit will be upheld. Bundy v. Powell, 229 N.C. 707,51 S.E.2d 307; Meacham v. R.R., 213 N.C. 609, 197 S.E. 189.
We are yet to consider, however, the exclusion of defendant's evidence offered to show the character and fiber of the deceased in dealing with dependent members of his family. Was any of this proffered evidence admissible or was its total exclusion correct? The answer lies in the type of questions to be decided and the pertinency of the evidence as a means to such decision.
It is provided by G.S. 28-174 that in an action for wrongful death the plaintiff may recover such damages "as are a fair and just compensation for the pecuniary injury resulting from such death." It is further provided in G.S. 28-173 that the amount recovered in such action is not liable to be applied as assets of the estate of the deceased, except as to burial expenses, "but shall be disposed of" according to the statute of distributions of personal property in case of intestacy.
The method established by the decisions for measuring the pecuniary loss resulting from the death of the deceased is to deduct the probable cost of his own living and usual or ordinary expenses from his probable gross income which might be expected to be derived from his own exertions during his life expectancy. Carpenter v. Power Co., 191 N.C. 130,131 S.E. 400. In arriving at this assessment (the present worth of which alone may be awarded the plaintiff), the jury is at liberty to take into consideration the age, health and expectancy of life of the deceased, his earning capacity, his habits, his ability and skill, the business in which he was employed and the means he had for earning money; the end of it all being, as expressed in Kesler v. Smith, 66 N.C. 154, to enable the jury fairly to fix upon the net income which the deceased might reasonably be expected to earn from his own exertions, had his death not ensued, and thus get at the pecuniary worth of the deceased to his family. Burns v. R.R., 125 N.C. 304, 34 S.E. 495. It follows, therefore, that evidence to all these points was properly admissible on the hearing. Burton v. R.R., 82 N.C. 505.
Was any of the excluded evidence conducive to one or more of these ends? We think so, especially as it was offered in reply to the evidence *Page 183 
of the plaintiff tending to show the gross earnings of the deceased over a period of time immediately preceding his death.
1. The defendant sought to show that the deceased entered a plea of guilty of nonsupport of his two minor children in the Winston-Salem Municipal Court on 7 October, 1943, and was sentenced to the roads, with execution against the person suspended on condition that he pay into the Clerk's office $10 a week for the support of his children, and that on 24 February, 1944, this judgment was ordered in abeyance during the period the deceased was in military service.
This was evidence of more than a single act of dereliction on the part of the deceased. It showed the neglect and disregard of a parent for his children which had necessarily continued for some time before he was hailed into court. Moreover, it revealed a serious defect of character — the will to "provide not for his own, and especially for those of his own house" (I Tim. 5:8) — and it was competent to be shown in evidence under authority of what was said in Kesler v. Smith, 66 N.C. 154. Dean Wigmore remarks in his valuable work on Evidence, Vol. I, Sec. 210a, 3rd Ed., ". . . it would seem that the particular bad acts of a deceased person would be receivable to evidence his moral character, as far as that character might be material in estimating the damages payable to next of kin in an action for loss of support due to death by wrongful act."
The evidence was admissible as bearing upon the moral fiber of the deceased and as tending to show what manner of man he was, especially in providing for those of his own household who were dependent upon him. Hicks v. Love, 201 N.C. 773, 161 S.E. 394; Hill v. Erie R. Co., 232 N.Y. Sup. 66.
2. The defendant offered the complaint and order for temporary alimony in the wife's action against the deceased for reasonable subsistence and counsel fees, filed in the Superior Court of Forsyth County, 29 January, 1944, which on objection were excluded.
As the record fails to show any service of process on the deceased or that he ever had any notice of the pendency of the action or participated in any hearing therein, the ruling of the court below will not be disturbed. In this connection, however, reference is made to the cases of Peterson v. Pete-Erickson Co., 186 Minn. 583, 244 N.W. 68; Piland v Yakima Motor Coach Co., 162 Wn. 456, 298 Pa. 419, and Austin Gaslight Co. v. Anderson (Texas, 1924), 262 S.W. 136, as bearing obliquely on the subject, if not directly in point. Anno. 90 A.L.R. 922.
3. The defendant sought to show that on the day before his death, the deceased filed suit against his wife in the Superior Court of Forsyth County for absolute divorce on the ground of two years' separation, alleging in his verified complaint that he and the defendant therein had entered into an agreement respecting the custody and support of their *Page 184 
three minor children and setting out the terms of the agreement. This was excluded presumably on the ground that the summons and complaint were returned unserved due to the death of the plaintiff therein.
It appears, however, that the deceased invoked the jurisdiction of the court and filed his verified complaint in the action, alleging matters which made manifest his attitude towards the support of his family. Indeed, the complaint spells out his attitude precisely. This was competent to be shown on the issue of damages. Hicks v. Love, supra.
In the case last cited, it was held competent for the administrator to show "that the deceased provided for his family, that he had a comfortable home, a 200-acre farm, and a plenty for his family to eat and wear." Clearly, then, if the plaintiff in an action for wrongful death is permitted to reveal the provident attitude of the deceased towards his family, the defendant cannot be denied the right to offer evidence tending to disclose a contrary attitude on the part of the deceased towards the same obligation. S. v. Creech, 229 N.C. 662, 51 S.E.2d 348.
4. The defendant offered the original inventory of the estate of the deceased, filed 25 July, 1947, showing "salary due decedent at date of death, $110.33," the present action for wrongful death, and nothing more.
We have two cases bearing upon the question, the one upholding the exclusion of such evidence, Cooper v. R.R., 140 N.C. 209, 52 S.E. 932, the other favoring its admission, Witte v. R.R., 171 N.C. 309,88 S.E. 435.
In the Cooper case, the evidence was first admitted and then withdrawn on the plaintiff's rebuttal showing that the "deceased had been taking care of five orphans, children of his deceased sister and her deceased husband; that he was taking care of his aged father over 80 years of age, and was taking care of an elder sister in addition to his own wife and child," as appears from the original transcript.
Here, no such complication is presented, at least not up to the present time. Such evidence has been admitted more often than excluded when it gave indication of accumulation by personal effort. McClamrock v. Colonial Ice Co., 217 N.C. 106, 6 S.E.2d 850. Where the jury is to determine "the reasonable expectation of pecuniary advantage from the continuance of the life of the deceased," we think it should have the benefit of all available light on the subject. Carter v. R.R., 139 N.C. 499,52 S.E. 642. And in the absence of matters to complicate the question, it would seem that what the deceased left at death as a result of his own exertions ought to be of some help to the jury in arriving at a proper estimate of his pecuniary worth to the recipients or disposees of the recovery who take after the manner of distributees of deceased's personal estate. Witte v. R.R., supra. *Page 185 
It results, therefore, from what is said above that the defendant is entitled to another hearing. It is so ordered.
New trial.